UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-86-H

CHRISTINE ABELL                                                                          PLAINTIFF

V.

BARDSTOWN MEDICAL INVESTORS, LTD.                                     DEFENDANTS
d/b/a LIFE CARE CENTER OF BARDSTOWN

**MEMORANDUM OPINION AND ORDER**

Christine Abell ("Plaintiff") brings suit against Bardstown Medical investors, Ltd., doing business as Life Care Center of Bardstown ("Defendant"), for negligence, gross negligence, wanton conduct, intentional conduct, and disregard for Plaintiff's safety by Defendant while Plaintiff was under Defendant's care. Defendant moves to dismiss on the grounds that Plaintiff's claim must be arbitrated under a signed, preexisting agreement (the "Agreement"). Plaintiff counters by asserting that the arbitration agreement is unenforceable due to 1) her mental incapacity to enter into binding contract and 2) the agreement's procedural unconscionability.

This Court must decide whether the Agreement is void either due to unconscionability or Plaintiff's mental incapacity.[1]

I.

On November 13, 2009, Plaintiff, then seventy-four (74) years old, presented to Flaget

---

[1] Though arguments to dismiss have been made on procedural grounds, the finding of this court on arbitration will render those issues moot – therefore, the only issue this court will decide will be that of the arbitration agreement.

Memorial Hospital in Bardstown, Kentucky, complaining of back pain resulting from a fall. She was diagnosed with an L1 fracture and was admitted into Flaget's Skilled Nursing Unit (SNU) for observation and treatment. On December 3, 2009, after spending three weeks in the hospital, Plaintiff was transferred to Defendant's facility. Prior to her hospitalization, Plaintiff resided at an "independent living" facility. Upon her transfer to Defendant's facility, during Plaintiff's Pre-Admission Screening, Kim Hovious, Activities Director, noted on that Plaintiff suffered from a "major mental disorder" and requested a Level II review of Plaintiff's mental status from Communicare, a community health agency servicing the Bardstown area. There was no indication that Plaintiff suffered from any level of impairment or from significantly sub-average general intellectual functioning. Communicare's response to the screening found that Level II was not indicated because the order from Flaget "states no previous treatment for this and that it could be related to the [urinary tract infection.]"

Directly after this screening, Ms. Hovious presented Plaintiff with a number of forms and authorizations to sign. These forms ranged from documents as mundane as her preferences for mail handling to documents as important as health-care directives and do-not-resuscitate orders. Over the course of the registration process, Defendant solicited no less than thirty-seven signatures and initials from plaintiff on registration documents. One of the documents was the Agreement.

The Agreement is a two-page, single-spaced document labeled "**VOLUNTARY AGREEMENT FOR ARBITRATION**." The Agreement states that the "Resident" – here, Plaintiff – and the "Facility" – here, Defendant – will both be bound by the terms contained within. Under the Agreement, each party agrees to waive the right to a trial before a judge or jury

for all disputes, including those at law or in equity, and each party has the right to counsel in arbitration and will bear its own attorney fees and costs. The Agreement further states that it is optional, and that its execution is not a precondition to receiving medical treatment at or for admission to the Facility. The Agreement does not appear to contain any provisions which deprive Plaintiff of existing substantive rights.

The claims in this lawsuit arise from Plaintiff's subsequent alleged mistreatment or denial of proper care.

II.

Kentucky law favors the enforcement of arbitration agreements. KRS §417.050 provides:

> "A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract."

This statute substantially tracks the language of the Federal Arbitration Act, 9 U.S.C. §2. Both statutes favor arbitration agreements and both laws are meant to ensure that arbitration agreements are enforced according to standards applied to other contracts. *See Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky.App. 2001) *and Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568 (6th Cir. 2003). Further, while it is "true that the party seeking to enforce an agreement [to arbitrate] has the burden of establishing its existence, ... once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004). Given the strong presumption in favor of enforcing arbitration agreements, Plaintiff bears the burden of showing that the Agreement is unenforceable for some reason.

III.

3

Plaintiff argues that the Agreement is unconscionable due to the totality of circumstances surrounding its execution. She argues that she arrived at Defendant's facility in a compromised physical and mental condition, and that the process of requiring her to review, initial, and sign so many documents prior to her admission gives rise to her claim. Plaintiff further argues that the placement of the Agreement, a one-spaced, two-page, boilerplate document amongst hundreds of other documents, created an unconscionable condition.

An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other." *Conseco*, 47 S.W.3d at 342. In *Conseco*, the Court of Appeals noted that review of arbitration clauses for unconscionability involves a two step process: first, a review focused on the procedures surrounding the making of the arbitration clause – procedural unconscionability – and second, a review of the substantive content of the arbitration clause – substantive unconscionability. *Id.* at 343. For the purposes of this motion, Plaintiff has only called attention to the procedural aspect of unconscionability, so this court will limit its analysis to this aspect.

Procedural unconscionability, or "unfair surprise" unconscionability "pertains to the process by which an agreement is reached and the form of the agreement, including the use therein of fine print and convoluted or unclear language.... [It] involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form." *Conseco*, 47 S.W.3d at 343, fn. 22. In the present case, the Agreement clearly broadcasts its content and what signing it would entail. The Agreement was also a distinct and separate contract from actual admission documents – it was not buried in fine print, nor was it an inconspicuous, nondescript paragraph within a larger document. *See Holifield v. Beverly Health and Rehabilitation Services, Inc.*, 2008

WL 2548104 (W.D.Ky. 2008) *and Smithson v. Integrated Health Services of Lester, Inc.*, 1999 WL 33523121 (E.D.Ky. 1999) (overruled in part on other grounds).

The Court can find no facts which suggest that the execution of the Agreement was procedurally unconscionable.

IV.

Plaintiff argues that the Agreement is unenforceable because she lacked the mental capacity to execute the Agreement. Plaintiff makes this argument by citing information taken prior to, and subsequent to, the execution of the Agreement.

In Kentucky, "an executed contract will not be lightly set aside in the absence of clear and convincing evidence." *Lausman v. Brown*, 168 S.W.2d 579, 585 (Ky.App. 1943). Further, as to mental competency when executing wills, contracts, and other documents, "[t]here is always the presumption of sanity and contractual capacity, rather than the converse," *Weathers v. Grange Ins.*, 2006 WL 2382715 *2 (Ky.App. 2006), *citing Rose v. Rose*, 182 S.W.2d 977, 978 (Ky. 1944), because "[e]very person is presumed to be sane and sound of mind," *Revlett v. Revlett*, 118 S.W.2d 150, 154 (Ky.App. 1938). Because of this presumption, Plaintiff has the burden of proving mental incompetency at the time the Agreement was executed. *See Weathers*, 2006 WL 2382715 *2. Kentucky courts require "some direct proof sufficient to convince the minds of the court that at the time the transactions were entered into that he did not and could not understand his acts." *Revlett*, 118 S.W.2d at 155.

As to the issue of mental competency, "courts will look only to the adequacy of the understanding where the validity of an act is questioned, and neither age, sickness, extreme distress, or debility of the body will affect the capacity to make a contract or conveyance, if sufficient intelligence remains to understand the transaction." *Hall v. Crouch*, 341 S.W.2d 591,

5

594 (Ky. 1961). Because the law understands that individuals suffering from conditions such as psychosis have lucid periods in which they can conduct themselves and their business normally, "unsoundness of mind to avoid a contract must relate to the immediate time when the contract was made." *Id.* A person has the requisite mental capacity if they have "the ability to understand and appreciate the consequences of the particular transaction." *Conners v. Elbe*, 269 S.W.2d 716, 718 (Ky. 1954). As such, the evidence must be such that it sufficiently proves that Plaintiff could not, and did not, understand that she was signing an arbitration agreement.

Though Plaintiff asserts that she was suffering from a "major mental disorder" when admitted to the facility, the record does not show either that she had an irrational state of mind or that she lacked the requisite mental capacity to execute the Agreement. Plaintiff's Discharge Summary says nothing about a mental illness or even mental issues. Plaintiff's Pre-Admission Screening document indicates that she suffered from a "major mental disorder," but it does not indicate any level of impairment or any sub-average general intellectual functioning. Further, the screening response from Communicare concluded that Plaintiff did not suffer from a "major mental illness," so a Level II evaluation for placement in a more specialized facility was unnecessary. Since there had been no prior treatment for Plaintiff's diagnosis, it was suspected to be related to her then-current urinary tract infection. The nurse's notes from the day after the execution of the Agreement merely demonstrate that Plaintiff suffered from medical problems – not that she failed to understand the Agreement. In fact, there is no professional opinion in the record stating that Plaintiff was unable to understand the arbitration agreement at the time of its execution.

The Court is compelled to conclude that Plaintiff has failed to meet the burden of establishing by clear and convincing evidence that she lacked the mental capacity to enter into

the Agreement at the time of execution.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to compel arbitration is SUSTAINED and the parties are to participate in binding arbitration as outlined in the Voluntary Agreement for Arbitration.

IT IS FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE to further action consistent with this opinion.

This is a final order.

cc: Counsel of Record